## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA ALEXANDER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1343-M |
| | ) | |
| HALLIBURTON COMPANY, | ) | |
| HALLIBURTON ENERGY SERVICES, | ) | |
| INC., and SAIC ENERGY, | ) | |
| ENVIRONMENT & INFRASTRUCTURE, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is defendant SAIC Energy, Environment & Infrastructure, LLC's ("SAIC")

Renewed Motion to Dismiss for Failure to State a Claim, filed February 8, 2012. On February 29,

2012, plaintiffs filed their response, and on March 7, 2012, SAIC filed its reply.

I.      Introduction

In their amended complaint, plaintiffs allege that from 1965 to 1992, defendants Halliburton

Company and Halliburton Energy Services, Inc. (collectively, "Halliburton") conducted rocket

reprocessing operations at its Osage Road facility (the "Site), which released perchlorate and nitrates

that migrated to the groundwater and plaintiffs' properties, causing them injury. Plaintiffs also

allege that Halliburton knew of the presence of perchlorate in Site groundwater starting in the 1980s.

With respect to SAIC, plaintiffs allege that at least as early as 2002, Halliburton retained

SAIC to conduct and oversee a groundwater monitoring program for the Site. Upon being retained,

SAIC reviewed various Halliburton and Oklahoma Department of Environmental Quality documents

which provided previous groundwater testing results and the history of Halliburton's operations at

the Site. After viewing these documents, plaintiffs allege that SAIC knew that previous testing at

the Site showed very high levels of perchlorate and nitrates in the groundwater. SAIC began testing groundwater at the Site in November of 2003 and was to continue performing biannual testing thereafter. Plaintiffs also allege that for nearly four years, from July of 2005 to June of 2009, SAIC inexplicably stopped the testing for nitrates, which was the only testing it was conducting at the time. In June of 2009, SAIC resumed groundwater testing and, shortly thereafter, also began testing for perchlorate. When it finally did commence testing for perchlorate, SAIC detected very high levels of perchlorate on the Site, and after further testing, confirmed that perchlorate had also spread off the Site, including to plaintiffs' wells.

Based upon the above allegations, plaintiffs have brought a negligence claim against SAIC. Pursuant to Federal Rule of Civil Procedure 12(b)(6), SAIC now moves this Court to dismiss the negligence claim.

## II.   Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief."

*Id.* at 679 (internal quotations and citations omitted).  Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations and citations omitted).  Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III.   Discussion

The elements of a negligence claim are (1) a duty of care owed by defendant to plaintiff, (2) defendant's breach of that duty, and (3) injury to plaintiff caused by defendant's breach of that duty. *See Lowery v. Echostar Satellite Corp*, 160 P.3d 959, 964 (Okla. 2007).  SAIC asserts that plaintiffs' amended complaint fails to state a claim for negligence because plaintiffs have presented no facts supporting any duty owed by SAIC to plaintiffs under Oklahoma law.

Regarding the element of duty, the Oklahoma Supreme Court has found the following:

> The existence of a duty of care is the threshold question in any negligence action.  A duty of care is an obligation owed by one person to act so as not to cause harm to another.  Whether the defendant owed the plaintiff a duty of care is a question of law for the court in a negligence action.  And, if the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law. . . .
>
> We have long recognized that without regard to the relationship of the parties, a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.  We have explained that a duty of care may arise from a set of circumstances which would require the defendant to foresee the particular harm to the plaintiff.
>
> In determining the legal question of the existence of a duty of care, the court considers policy factors that lead the law to say a

particular plaintiff is entitled to protection. The most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff. Generally, a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous. Foreseeable risk of harm establishes a zone of risk to assess whether defendant's conduct created a generalized and foreseeable risk of harm to plaintiff, by a reasonable prudent person standard. Foreseeable risk of harm that will lead the law to say a particular plaintiff is entitled to protection will not generally be extended beyond reason and good sense.

*Id.* (internal citations omitted).

Having carefully reviewed plaintiffs' amended complaint, and presuming that all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have set forth sufficient factual allegations to properly plead a negligence claim against SAIC.[1] Specifically, the Court finds that plaintiffs have set forth sufficient factual allegations to support a finding that SAIC owed them a duty under Oklahoma law. In their amended complaint, plaintiffs specifically allege that Halliburton retained SAIC to conduct groundwater monitoring at the Site and that SAIC negligently performed that monitoring. *See* First Amended Petition at ¶ 3. Plaintiffs further allege that for nearly four years, from 2005 to 2009, SAIC failed to even test the groundwater monitoring wells that were in place and that were it not for this failure, plaintiffs would have known of the nitrate and perchlorate contamination years earlier. *See id.* at ¶¶ 3, 46. Additionally, the Court finds that it would be foreseeable to SAIC that if it negligently performed the groundwater monitoring that it was retained by Halliburton to

---

[1]The Court would note that its determination that plaintiffs have stated a negligence claim is based upon the standard this Court must use in determining a motion to dismiss pursuant to Rule 12(b)(6). The Court would further specifically note that after discovery is conducted in this case, and the actual contract between SAIC and Halliburton is before this Court, this determination may change.

perform there would be a foreseeable risk of harm to plaintiffs.  Specifically, the Court finds that it is foreseeable that if no monitoring were conducted or if the monitoring were negligently performed, the nature of any contamination at the Site and in the surrounding area would go undetected, thereby potentially harming plaintiffs.

IV.     Conclusion

        Accordingly, for the above reasons, the Court DENIES SAIC's Renewed Motion to Dismiss for Failure to State a Claim [docket no. 48].

        **IT IS SO ORDERED this 18th day of April, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE